IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RACHEL GNIEWKOWSKI, et al.

    Plaintiffs,

    v.

LETTUCE ENTERTAIN YOU
ENTERPRISES, INC,

    Defendant.

16cv1898
ELECTRONICALLY FILED
LEAD CASE

---

LISA FRAZIER, ACCESS NOW, INC.,
R. DAVID NEW

    Plaintiffs,

    v.

CHURCHILL DOWNS INCORPORATED,

    Defendant.

17cv0006
MEMBER CASE

---

LISA FRAZIER, ACCESS NOW, INC.
*a not-for-profit corporation, and,* R. DAVID
NEW,

    Plaintiffs,

    v.

AMERISERV FINANCIAL BANK,

    Defendant.

17cv0031
MEMBER CASE

# MEMORANDUM OPINION

Before the Court is a Motion for Dismissal filed by Defendant, Churchill Downs Incorporated ("Churchill"), in accordance with Rule 12(b)(1) of the Federal Rules of Civil Procedure. Doc. no. 45. Plaintiff filed a Brief in Opposition (doc. no. 61), and Churchill filed a Reply to the Brief in Opposition. Doc. no. 63.

Also before the Court, is a Motion for Dismissal filed by AmeriServe Financial Bank ("Ameriserve"), in accordance with Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Doc. no. 50. Plaintiff filed a Brief in Opposition (doc. no. 65), and AmeriServe filed a Reply to the Brief in Opposition. Doc. no. 75.

These matters are now ripe for adjudication.

## I. STANDARD OF REVIEW

### A. Rule 12(b)(1)

A Motion to Dismiss pursuant to Fed. R.Civ.P. 12(b)(1) challenges this Court's "very power to hear the case." *See Judkins v. HT Window Fashions Corp.*, 514 F. Supp. 2d 753, 759 (W.D. Pa. 2007) (Lancaster, J.) (quoting *Mortenson v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). As the party asserting jurisdiction, Plaintiff "bears the burden of showing that its claims are properly before the district court." *Dev. Fin. Corp. v. Alpha Housing & Health Care*, 54 F.3d 156, 158 (3d Cir. 1995). In reviewing a Motion to Dismiss pursuant to Rule 12(b)(1), this Court must distinguish between facial attacks and factual attacks. *See Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006).

A facial attack challenges the sufficiency of the pleadings, and the Court must accept the Plaintiff's allegations as true. *Id.* A Defendant who attacks a complaint on its face "[asserts] that considering the allegations of the complaint as true, and drawing all reasonable inferences in

favor of [plaintiff], the allegations of the complaint are insufficient to establish a federal cause of action." *Mullen v. Thompson*, 155 F. Supp. 2d 448, 451 (W.D. Pa. 2001). Dismissal is proper under Rule 12(b)(1) only when "the claim clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or. . . is wholly insubstantial and frivolous." *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991) (quoting *Bell v. Hood*, 327 U.S. 678, 682 (1946)).

When, as in this case, a Defendant launches a factual attack on subject matter jurisdiction, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Petruska*, 462 F.3d at 302 (quoting *Mortenson*, 549 F.2d at 891). In a factual attack, this Court must weigh the evidence relating to jurisdiction, with discretion to allow affidavits, documents, and even limited evidentiary hearings. *See United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007).

### B. Rule 12(b)(6)

In considering a Rule 12(b)(6) motion, Federal Courts require notice pleading, as opposed to the heightened standard of fact pleading. Fed. R. Civ. P. 8(a)(2) requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds on which it rests.'" *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Building upon the landmark United States Supreme Court decisions in *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the United States Court of Appeals for the Third Circuit

3

explained that a District Court must undertake the following three steps to determine the sufficiency of a complaint:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013) (citation omitted).

The third step requires this Court to consider the specific nature of the claims presented and to determine whether the facts pled to substantiate the claims are sufficient to show a "plausible claim for relief." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013). "While legal conclusions can provide the framework of a Complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 664.

This Court may not dismiss a Complaint merely because it appears unlikely or improbable that Plaintiff can prove the facts alleged or will ultimately prevail on the merits. *Twombly*, 550 U.S. at 563, n.8. Instead, this Court must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. *Id.* at 556. Generally speaking, a Complaint that provides adequate facts to establish "how, when, and where" will survive a Motion to Dismiss. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 212 (3d Cir. 2009).

In short, a Motion to Dismiss should not be granted if a party alleges facts, which could, if established at trial, entitle him/her to relief. *Twombly*, 550 U.S. at 563 n.8.

## II. BACKGROUND

Because the Court writes primarily for the benefit of the parties, the factual background shall be truncated. The Court assumes all facts set forth in the Complaints to be true solely for the purpose of deciding these Motions.

Plaintiffs are blind or visually impaired individuals who claim Defendants' websites are not accessible to them in violation of the Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* Plaintiffs' Complaints against the two Defendants at issue (Churchill and AmeriServ), allege that a permanent injunction is necessary to ensure Defendant's websites will become, and will remain, accessible to Plaintiffs and other blind or visually impaired individuals.

AmeriServ, as a federally-chartered bank, offers and advertises a full range of financial solutions and banking expertise to the general public through its website. See doc. no. 1, ¶ 13, in case no. 2:17-cv-00031. AmeriServ's principal place of business is located in Johnstown, Pennsylvania and AmeriServ owns and operates "brick and mortar" retail locations throughout Pennsylvania. Id.

Churchill, a Kentucky corporation, owns, operates, and maintains the venue where the Kentucky Derby is held annually, as well as five other racetracks, six casinos, the country's leading online wagering business, a video poker business, a multi-state network of off-track betting facilities, a collection of racing-related data, and telecommunication companies that support its sports and gaming operations. See doc. no. 1, ¶ 13, in case no. 2:17-cv-00006. Churchill offers its website users the information they need to participate in its online gaming and betting platforms, such as information on handicapping, wagering, live odds, and calendars

of events taking place at Churichill's physical locations. Churchill's website also helps users view and manage their rewards club membership and member benefits. Id. at ¶ 17.

As noted above, both Churchill and AmeriServ have filed Motions to Dismiss the Complaint for a Permanent Injunction brought against each of them and their legal arguments will be discussed, collectively, below.

## III. DISCUSSION

### A. Ameriserv's 12(b)(1) Argument

AmeriServ first argues that Plaintiffs failed to sufficiently allege that they have standing to pursue this lawsuit. More specifically, AmeriServ contends that Plaintiffs did not allege that they suffered an "injury in fact," meaning "concrete and particularized" harm that is "actual or imminent" in order to maintain standing. Doc. no. 51, p. 5. AmeriServ also contends that none of the Plaintiffs can demonstrate a "real and immediate threat of future injury." Doc. no. 51, p. 5.

With respect to standing, the United States Supreme Court has held:

> [T]he irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact" – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical[.] Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court. Third, it must be "likely," as opposed to merely "speculative," that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotations and citations omitted); *see also Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.*, 140 F.3d 478, 484–85 (3d Cir. 1998) (same three requirements must be met to establish standing). The Supreme Court noted that the party invoking federal jurisdiction bears the burden of establishing

6

these three elements "with the manner and degree of evidence required at the successive stages of the litigation." *Id.* at 561. The Court further noted that "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Id.* (internal quotations and citation omitted).

Turning to the instant case, AmeriServ accepts the fact that Plaintiff Frazier is a resident of Allegheny County, Pennsylvania, and is legally and permanently blind – a fact which this Court also accepts as true. Doc. no. 51, p. 2; (see also doc. no. 1, case no. 2:17-cv-00031). As a blind person, Plaintiff utilizes screen reading software in order to access website content. Doc. no. 1, ¶ 3, case no. 2:17-cv-00031. Per the Complaint, Frazier's claims arose in this judicial district when she encountered access barriers to AmeriServ's website while utilizing her screen reader software. Id.

AmeriServ also notes that per the Complaint, Plaintiff New, is a resident of the state of Florida, is also legally and permanently blind, and is the President of Access Now, Inc. ("ANI"). Doc. no. 1, case no. 2:17-cv-00031. Plaintiff New also uses screen reader software to access websites. Id.

Finally, AmeriServ notes that Plaintiff ANI is a non-profit organization that provides advocacy services on behalf of blind individuals and has members representing 47 states, including residents of the Commonwealth of Pennsylvania. Id. The Complaint states that one of the primary purposes of ANI is to represent its members to assure that public accommodations are accessible to and useable by its members, and to assure that its members are not discriminated against because of their disabilities, or denied the benefits of the services,

7

programs, and activities of public accommodations. Id. AmeriServ does not dispute ANI's purpose.

The Complaint alleges that the two individual Plaintiffs (Frazier and New), who use software to "read" websites, encountered "barriers" when trying to read AmeriServ's website thereby preventing these two blind Plaintiffs from equal access to the content available to the public through AmeriServ's website. See doc. no. 1, case no. 2:17-cv-00031, ¶ 20-21. The Complaint also alleges that because of these "barriers," Plaintiffs were unable to "research the personal banking services AmeriServ provides." Id. at ¶ 22.

The two affidavits filed by AmeriServ in support of its 12(b)(1) Motion do not deny, rebuff, or otherwise disagree with the Complaint's statements alleging that AmeriServ's website contains barriers preventing Plaintiffs' software from reading the public content on the AmeriServ website. Doc. nos. 50-2 and 50-3. To the contrary, one of the affidavits indicates that account holders have greater access to information through the website; however, the affidavit further notes that ". . . non-account holders are free to view . . . the public pages of the AmeriServ Website . . .". Doc. no. 50-3, ¶ 6. This same affidavit notes that its "brick and mortar locations comply with applicable provisions of the Americans with Disabilities Act and accommodates customers who are blind or visually impaired." Id. at ¶ 4.

Given that this case is in the earliest stage of the proceedings, and given that AmeriServ's affidavits do not refute the key allegations of Plaintiffs' Complaints relating to the Plaintiffs' inability to access the content on AmeriServ's website, this Court finds that Plaintiffs have sufficiently established that they have sustained an injury in fact. Specifically, Plaintiffs suffered "an invasion of a legally protected interest which is concrete, particularized, and actual." The Court finds that because Ameriserv's website barred Plaintiffs' screen reader software from

reading the content of its website, Plaintiffs were unable to conduct on-line research to compare financial services and products; and this constitutes an injury-in-fact under Article III of the ADA.[1]

As for Plaintiff ANI, it asserts it possesses standing in these lawsuits on behalf of its members. As noted by Plaintiffs in their Brief in Opposition to AmeriServ's Motion to Dismiss, the Supreme Court in *Hunt v. Washington State Apple Advertising Com'n*, 432 U.S. 333 (1977) held:

> "(W)hether an association has standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought. If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured. Indeed, in all cases in which we have expressly recognized standing in associations to represent their members, the relief sought has been of this kind." 422 U.S., at 515, 95 S.Ct., at 2213.
>
> Thus we have recognized that an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted

---

[1] The Court notes that AmeriServ and Plaintiffs concurred that a four-part standing test (which has not been adopted by the United States Court of Appeals for the Third Circuit) could apply in this case. This four-part test focuses on the likelihood of the plaintiff to return to the place of public accommodation. The four criteria are: (1) the plaintiff's proximity to the defendant's place of public accommodation; (2) the plaintiff's past patronage; (3) the definiteness of the plaintiff's plan to return; and (4) the plaintiff's frequency of nearby travel. See cases cited by AmeriServ (doc. no. 51, p. 6-7): *Brown v. Showboat Atlantic City*, No. 08–5145, 2010 WL 5237855, at *8 (D.N.J. Dec. 16, 2010); *Access 4 All, Inc. v. Boardwalk Regency Corp.*, No. 08–3817, 2010 WL 4860565, at *3 (D.N.J. Nov. 23, 2010); *Dempsey v. Pistol Pete's Beef and Beer*, 2009 WL 3584597, at *4 (citing *Cottrell v. Zagami, LLC*, No. 08–3340, 2009 WL 1416044, at *3 n. 3 (D.N.J. May 20, 2009 (collecting cases)) and cases cited by Plaintiffs (doc. no. 65, p. 9, n.2); *Garner v. VIST Bank*, 2013 WL 6731903, at *5 (E.D. Pa. Dec. 20, 2013) (citing cases); *Klaus v. Jonestown Bank & Trust Co. of Jonestown*, 2013 WL 4079946, at *7 (M.D. Pa. Aug. 13, 2013). Although this Court acknowledges that many United States District Courts within the Third Circuit have applied the four-part test, this Court declines to apply it here because: (1) all of the cases cited differ factually from the instant matter in that they involve physical barriers to a physical (brick-and-mortar) location; (2) the fourth requirement in the four-part test would not apply to a website case such as the one before this Court because no travel is required; and (3) the test has not been adopted by the Court of Appeals. Additionally, this four-part test appears to diverge from the three-part Supreme Court criteria regarding standing.

nor the relief requested requires the participation of individual members in
the lawsuit.

*Hunt* at 343.

Based on the facts as pled by Plaintiffs concerning ANI, specifically those found in paragraph 11 of the Complaint filed in case no. 2:17-cv-00031, and given that Plaintiffs are seeking an injunction which can reasonably be supposed that, if granted, will inure to the benefit of the members of ANI, the Court also finds that Plaintiff ANI has standing to pursue this lawsuit against AmeriServ.

Accordingly, AmeriServ's Motion to Dismiss pursuant to Rule 12(b)(1) will be denied.

**B.  AmeriServ's 12(b)(6) Argument**

AmeriServ argues that a website is not a "place of public accommodation" under Title III of the ADA.  Doc. no. 51, p. 3.  AmeriServ argues that if its website is not a place of public accommodation, then AmeriServ cannot be said to have violated the ADA by discriminating against Plaintiffs.

To state a claim under the ADA, Plaintiffs must show that the alleged discrimination involves the services of a "place of public accommodation."  42 U.S.C. § 12182(a) ("No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.").

The ADA defines "public accommodation" in relevant part as:

> (7) Public accommodation
>
> The following private entities are considered public accommodations for purposes of this subchapter, if the operations of such entities affect commerce --

*   *   *

> (F) a laundromat, dry-cleaner, <u>bank</u>, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment . . .

42 U.S.C. § 12181 (emphasis added).

AmeriServ does not dispute that it is a bank and is, therefore, a place of public accommodation. However, AmeriServ contends that the above statute only renders its brick and mortar buildings as "places of public accommodation," but not its website.

This argument appears to be three-fold. First, AmeriServ admits that although AmeriServ account holders can conduct financial transactions through the AmeriServ website, Plaintiffs are not AmeriServ account holders, so their inability to access content from the website is of no moment. Second, although AmeriServ admits that its website provides the general public with information about its financial services, it argues that Plaintiffs' inability to access that information does not foreclose them from obtaining that same information elsewhere – either at an AmeriServ brick and mortar facility, or via a telephone conversation with an AmeriServ representative. Third, AmeriServ also argues that Plaintiffs' statement in their Complaint alleging that its website is a "place of public accommodation" is a "legal conclusion" and not a "fact" which this Court must accept as true.

Plaintiffs counter-argue that AmeriServ's website constitutes a "place of public accommodation." Although Plaintiffs argument runs contrary to AmeriServ's, both Plaintiffs and AmeriServ rely on some of the same case law emanating from the Court of Appeals for the Third Circuit. Plaintiffs also rely on a decision issued by the United State District Court for the District of Vermont.

In analyzing the Parties' respective positions on whether AmeriServ's website is a "place of public accommodation," this Court begins by highlighting the purpose of the ADA as stated by Congress, which reads in pertinent part as follows:

> FINDINGS.--Congress finds that-- (1) some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older; (2) historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem; (3) discrimination against individuals with disabilities persists in such critical areas as employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services; . . . .

AMERICANS WITH DISABILITIES ACT OF 1990, PL 101–336, July 26, 1990, 104 Stat 327.

The United States Court of Appeals for the First Circuit provided a thorough, but succinct, summary of the purpose of the ADA based upon its legislative history as follows:

> The purpose of the ADA is to "invoke the sweep of Congressional authority . . . in order to address the major areas of discrimination faced day-to-day by people with disabilities," 42 U.S.C. § 12101(b). The ADA was enacted to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). The purpose of Title III of the ADA, is "to bring individuals with disabilities into the economic and social mainstream of American life . . . in a clear, balanced, and reasonable manner." H.R.Rep. No. 485, 101st Cong., 2d Sess., pt. 2, at 99 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 382. In drafting Title III, Congress intended that people with disabilities have equal access to the array of goods and services offered by private establishments and made available to those who do not have disabilities. S.Rep. No. 116, 101st Cong., 1st Sess. at 58 (1989).

*Carparts Distribution Ctr., Inc. v. Auto. Wholesaler's Ass'n of New England, Inc.*, 37 F.3d 12, 19 (1st Cir. 1994).

Next, this Court examines two cases cited by the Parties, both emanating from the Court of Appeals for the Third Circuit, and interpreting the specific phrase "place of public accommodation."

In the first case relied upon by the Parties, *Ford v. Schering-Plough Corp.*, 145 F.3d 601 (3d Cir. 1998), the plaintiff sued her former employer alleging that differences in mental and physical health benefits provided by her employer through policies of insurance violated various provisions of the ADA. The Court of Appeals agreed that the plaintiff-employee, who could not perform the functions of her former position due to a mental illness, could sue her employer under Title I of the ADA regarding her disability benefits; however, the Court determined that the plaintiff-employee's claim against her employer and MetLife, the disability insurer, alleging a disparity in the employer's insurance benefits for mental and physical disabilities did not violate Title III of the ADA.

In reaching this conclusion, the Court of Appeals noted as follows:

> The fact that an insurance office is a public accommodation, however, does not mean that the insurance policies offered at that location are covered by Title III. In the instant case, Schering [plaintiff's employer] and MetLife offered disability benefits to Ford in the context of her employment at Schering, meaning that the disability benefits constituted part of the terms and conditions of Ford's employment. Terms and conditions of employment are covered under Title I, not Title III. . . . Therefore, Ford cannot state a claim against her employer, Schering, pursuant to Title III.
>
> Regarding MetLife, the disability benefits that Ford challenges do not qualify as a public accommodation and thus do not fall within the rubric of Title III. The plain meaning of Title III is that a public accommodation is a place, leading to the conclusion that " '[i]t is all of the services which the public accommodation offers, not all services which the lessor of the public accommodation offers[,] which fall within the scope of Title III.' " Id. at 1011 (quoting *Stoutenborough v. National Football League, Inc.*, 59 F.3d 580, 583 (6th Cir.1995) (a television broadcast is not covered by Title III)). This is in keeping with the host of examples of public accommodations provided by the ADA, all of which refer to places. See

> 42 U.S.C. § 12181(7). Since Ford received her disability benefits via her employment at Schering, she had no nexus to MetLife's "insurance office" and thus was not discriminated against in connection with a public accommodation. Furthermore, the "goods, services, facilities, privileges, advantages, or accommodations" concerning which a disabled person cannot suffer discrimination are not free-standing concepts but rather all refer to the statutory term "public accommodation" and thus to what these places of public accommodation provide. Ford cannot point to these terms as providing protection from discrimination unrelated to places.

145 F.3d at 612–13.

In the second case referenced by the Parties, *Peoples v. Discover Financial Services*, 387 Fed. Appx. 179 (3d Cir. 2010), the plaintiff alleged he had been overcharged by a prostitute when he paid with his credit card for services he received. The plaintiff filed a fraud claim with defendant ("DFS"), his credit card company, but after completing an investigation, DFS ultimately refused to credit the Plaintiff's account for the amounts in dispute. The plaintiff sued DFS for ADA violations claiming "DFS" discriminated against him by failing to consider his blindness when addressing his fraud claim. The district court granted summary judgment in DFS' favor, with a key determination being that plaintiff used his credit card to pay for his transactions with the prostitute at her apartment, and because DFS did not own, lease, or operate that location, it was not a place of public accommodation over which DFS exercised control.

On appeal, the Court of Appeals noted that "Courts of Appeals are split on whether the term 'public accommodation,' as used in the ADA, refers to an actual physical structure or whether it has some broader meaning." 387 Fed. Appx. at 183. Relying on its own earlier decision in *Ford*, the Court of Appeals held as follows:

> Our court is among those that have taken the position that the term is limited to physical accommodations. *Ford*, 145 F.3d at 612. Despite [the plaintiff's] request that we "clarify or reconsider" our holding in *Ford* and extend our interpretation of public accommodations to include things other than physical places (Appellant's Op. Br. at 27), we are bound by our precedent. *See Pa. Ass'n of Edwards Heirs v. Rightenour*, 235 F.3d 839,

14

> 844 (3d Cir. 2000) ("Under this Court's Internal Operating Procedures, we are bound by, and lack the authority to overrule, a published decision by a prior panel ....") (citation omitted).
>
> Under *Ford*, [the plaintiff's] argument fails because the communication between [the prostitute's] credit card processing terminal and DFS is not a "public accommodation" within the meaning of the ADA. *See* 145 F.3d at 612 (holding that "[t]he plain meaning of Title III is that a public accommodation is a place . . ."). As the District Court noted, "[t]he evidence is that [the plaintiff] used his Discover Card to pay for the transactions with [the prostitute] at her apartment," and, "[t]hough [DFS's] credit services can be used by cardmembers at a merchant's place of accommodation, DFS itself does not own, lease or operate those locations." (App. at 6.) Thus, because DFS's alleged discrimination (*i.e.,* the supposedly insufficient investigation of [the plaintiff's] fraud claim) in no way relates to the equal enjoyment of goods, services, facilities, privileges, advantages, or accommodations on physical property that DFS, rather than [the prostitute], owns, leases, or operates, the District Court correctly granted summary judgment against Peoples on his ADA claim.

*Id.* at 183-84 (footnote omitted).

In both of the above cases, the Court of Appeals did not wish to expand the meaning of "place of public accommodation" to include places where: (1) an insurance policy was issued or implemented, or (2) a credit card company's processing terminals were located. Importantly, however, in both *Ford* and *Peoples*, the alleged discrimination occurred at a location where neither the insurance carrier in *Ford,* nor the credit card company in *Peoples,* had ownership or possession, or exercised control. Conversely, in the instant matter, the alleged discrimination <u>has</u> taken place on property that AmeriServ owns, operates and controls – the AmeriServ website.

This Court finds that because AmeriServ owns, operates, and controls the property through which persons access its services, this matter is distinguishable from the *Ford* and *Peoples* cases. This Court also finds that the allegations set forth in Plaintiff's Complaint establish that the alleged discrimination – Plaintiffs' inability to access financial services information – took place at a property that AmeriServ owns, operates, and controls.

Accordingly, the Court will deny AmeriServ's 12(b)(6) Motion because Plaintiffs have properly pled a legally cognizable claim under Title III of the ADA.

In addition to the above argument on "place of public accommodation," AmeriServ also urges this Court to Dismiss the Complaint under Rule 12(b)(6) for other reasons.

First, AmeriServ notes that Plaintiff's counsel has brought over 40 cases in the "past two (2) years asserting the same claims against a number of different businesses with websites[.]" This assertion is wholly irrelevant to a motion for dismissal under Rule 12(b)(6) or 12(b)(1).

Next, AmeriServ asserts that the Complaint is "unclear" when and how Plaintiffs may have attempted to use the website because Plaintiffs are not account holders at AmeriServ. According to AmeriServ's Brief in Support of its Motion to Dismiss, a person must hold an account to use the AmeriServe website or "otherwise engage in banking with AmeriServ." Doc. no. 51, p. 7. A review of the AmeriServ website shows this statement to be inaccurate. The "home" or "landing" page of the AmeriServ website enables a person without an account to learn what services AmeriServ has to offer potential customers. The home page has tabs labelled "personal," "business," "trust and investing," "investor relations," "community," and "about us." Clicking on any one of these tabs enables a user to: (1) obtain general information on that particular topic, and (2) drill down through additional tabs within a topic to obtain even more specific information about what AmeriServ offers.

Finally, AmeriServ contends that the Complaint does not allege how Plaintiffs would be deterred from using AmeriServ's website. AmeriServ notes that it has no indication that Plaintiffs "visited any branch [brick and mortar] of Ameriserv or accessed AmeriServ's call center to inquire about its financial services." Doc. no. 51, p. 7. This argument is self-defeating.

Plaintiffs have sued because AmeriServ's website – not its buildings or call centers – is inaccessible to them.

### C. Churchill's and AmeriServ's 12(b)(1) Arguments

Churchill makes several arguments in support of its position that Rule 12(b)(1) requires dismissal of Plaintiffs' lawsuit. See doc. nos. 45-46.

Churchill's first argument suggests that Plaintiff's claim fails because the Complaint does not allege an "injury-in-fact" thereby stripping Plaintiffs of their standing to sue.

Relying on the United States Supreme Court and Third Circuit case law (cited above) which established and adopted the three-part test for determining when a party possesses standing, this Court finds that the facts surrounding Plaintiffs' interaction with Churchill's website to be substantially similar to their encounter with AmeriServ's website.

With respect to Churchill, the Complaint alleges "[d]espite attempting to use and navigate the [Churchill] websites, Plaintiffs have been denied the full use and enjoyment of the facilities, goods, and services available on the [w]ebsites as a result of access barriers." The Complaint further explains that the "barriers at the [w]ebsites have caused a denial of Plaintiffs' full and equal access in the past, and now deter Plaintiffs from attempting to use Defendant's [w]ebsites, or frequent the physical locations they advertise." See doc. no. 1 at case no. 2:17-cv-00006, ¶ 19-20. According to the Complaint, because the Churchill websites are not accessible to these two blind individual Plaintiffs, they cannot participate in the gaming and entertainment services provided by Churchill.

Given that this case is in the earliest stage of the proceedings, the Court finds that these allegations sufficiently establish that the individual Plaintiffs have sustained an injury in fact. Specifically, Plaintiffs suffered "an invasion of a legally protected interest which is concrete,

particularized, and actual." *Defenders of Wildlife*, 504 U.S. at 560-61. The Court finds that because Churchill's websites barred Plaintiffs' screen reader software from reading the content of its websites, Plaintiffs were unable to participate in the gaming and entertainment services provided by Churchill. Moreover, this website impediment purportedly has had a negative impact on Plaintiffs' ability to frequent Churchill's brick and mortar locations as well. This constitutes an injury-in-fact under Article III of the ADA.

With respect to Plaintiff ANI, again based on the Supreme Court case law cited above, ANI is an association with members who will likely benefit if the injunction sought by Plaintiffs in this case were granted. Based on the facts as pled by Plaintiffs concerning ANI, specifically those found in paragraph 11 of the Complaint filed in case no. 2:17-cv-00006, and given that Plaintiffs are seeking an injunction which can reasonably be supposed that, if granted, will inure to the benefit of the members of ANI, the Court finds that Plaintiff ANI has standing to pursue this lawsuit against Churchill.

Churchill's next argument in favor of dismissal under Rule 12(b)(6) is that Plaintiffs failed to meet the "intent to return" standard, which Churchill claims is necessary to prove Plaintiffs' standing. Relying on *Garner v. VIST Bank*, No. 12-cv-5258, 2013 WL 6731903, at *4-5 (E.D. Pa. Dec. 20, 2013), a decision emanating from the District Court for the Eastern District of Pennsylvania, Churchill contends that the "specific requirements of the intent to return method are as follows: (1) the plaintiff has alleged that the defendant engaged in past discriminatory conduct that violates the ADA; (2) it is reasonable to infer from allegations in the complaint that the discriminatory conduct will continue; and (3) <u>it is reasonable to infer based on past patronage, proximity of the public accommodation to the plaintiff's home, business, or personal connections to the area, that the plaintiff intends to return to the public accommodation</u>

in the future." Doc. no. 46, p. 6 (emphasis in original). Churchill further claims that "a website must be connected to a physical structure and when there is no connection between the services offered and a physical place of accommodation, a plaintiff's Title III claim must be dismissed." Id.

For substantially the same reasons this Court rejected the four-part standing test in its footnote "1" above, this Court likewise rejects this three-part test proposed by Churchill. First, the *Garner* case is factually distinguishable from the instant matter and is not binding on this Court. Second, the third requirement in the three-part test would not apply to a website case such as the one before this Court, because the "proximity [of Churchill's website] to Plaintiffs' homes" is a nonissue; and (3) this test has not been adopted by the Court of Appeals for the Third Circuit. Additionally, this three-part test appears to diverge from the three-part Supreme Court criteria regarding standing, which concerns this Court. As such, this Court relies upon the Supreme Court precedent when determining whether Plaintiffs, such as those who have brought this case, have standing to pursue their claims.

For similar reasons, Churchill's third argument – that Plaintiffs cannot meet the "deterrent effect test" – also fails. Churchill argues that Plaintiffs lack standing because they did not show that they intend to return to the place of the alleged discrimination. Under the facts of this case, that would mean the Churchill websites.

This Court notes that, again, the case law relied upon by the parties in advancing and defending against this argument, are cases involving physical structures. Here, Plaintiffs were unable to access some or all parts of the Churchill websites, and until the websites are configured in such a way so as to eliminate the barriers which prevent Plaintiffs' website reading software to work, any attempt on Plaintiff's part to return to the Churchill websites would be futile. Thus,

the case law cited by Churchill on this issue is not on point and not applicable to the facts presented here.

Finally, Churchill argues that Plaintiffs Frazier, New, and ANI each lack standing for the same reasons AmeriServ set forth in its 12(b)(1) argument. For the same reasons noted above in subsection "A," those arguments fail.

Accordingly, Churchill's 12(b)(1) Motion to Dismiss will be denied.

## IV. CONCLUSION

Based on the foregoing, both AmeriServ's and Churchill's Motions to Dismiss Plaintiffs' Complaints will be denied. An appropriate Order will issue.

/s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc: All ECF Counsel of Record